

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **VS.** | § | **CASE NO. 1:07-CR-208(6)** |
| | § | |
| **CLARENCE MAGEE** | § | |

### FINDINGS OF FACT AND RECOMMENDATION ON GUILTY PLEA
### BEFORE THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this matter to the undersigned United States Magistrate Judge for administration of a guilty plea and allocution under Rules 11 and 32 of the Federal Rules of Criminal Procedure. Magistrates have the statutory authority to conduct a felony guilty plea proceeding as an "additional duty" pursuant to 28 U.S.C. § 636(b)(3). *United States v. Bolivar-Munoz*, 313 F.3d 253, 255 (5th Cir. 2002), *cert. denied,* 123 S. Ct. 1642 (2003).

On June 24, 2008, this cause came before the undersigned United States Magistrate Judge for entry of a guilty plea by the Defendant, Clarence Magee, on **Count 1** of the charging

1

**Information**[1] filed in this cause.  Count 1 of the Information charges that from on or about December 1, 2006, and continuing thereafter up to and including December 20, 2006, in the Eastern District of Texas, Southern District of Texas, and elsewhere, Clarence Magee, Defendant herein, and others both known and unknown, did knowingly and intentionally conspire with each other, as well as with other persons, to knowingly and intentionally distribute and possess with intent to distribute a Schedule II controlled substance, namely cocaine, in an amount of thirty five hundred (3,500) grams or more, but less than five thousand (5,000) grams, in violation Title 21, United States Code, Section 841, all in violation of Title 21, United States Code, Section 846.

Defendant, Clarence Magee, entered a plea of guilty to Count 1 of the Information into the record at the hearing.

After conducting the proceeding in the form and manner prescribed by Federal Rule of Criminal Procedure 11 the Court finds:

a.    That Defendant, after consultation with counsel of record, has knowingly, freely and voluntarily consented to the administration of the guilty plea in this cause by a United States Magistrate Judge in the Eastern District of Texas subject to a final approval and imposition of sentence by the District Court.

b.    That Defendant and the Government have entered into a plea agreement which was disclosed and addressed in open court, entered into the record, and placed under seal.

---

[1]The Defendant executed a waiver of indictment which was filed in the record at the guilty plea hearing.

c.      That Defendant is fully competent and capable of entering an informed plea, that Defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing, voluntary and freely made plea.  Upon addressing the Defendant personally in open court, the Court determines that Defendant's plea is voluntary and did not result from force, threats or promises.  *See* FED. R. CRIM. P. 11(b)(2).

d.      That Defendant's knowing, voluntary and freely made plea is supported by an independent factual basis establishing each of the essential elements of the offense and Defendant realizes that his conduct falls within the definition of the crime charged under 21 U.S.C. § 846.

## STATEMENT OF REASONS

As factual support for Defendant's guilty plea, the Government presented the following evidence, which was admitted into the record at the plea hearing.  *See Factual Basis and Stipulation.*  If the case proceeded to trial, the Government and Defendant agreed and stipulated to the information set forth in the factual basis which would be used by the Government in support of the Defendant's plea of guilty.  The Government and Defendant agreed that the Government would have proven that Defendant is one and the same with the person charged in the Information and that the events described in the Information occurred on the dates and in the places alleged in the Eastern District of Texas and the Southern District of Texas.  The Government and Defendant agreed that the Government would have proven, through the testimony of witnesses and through admissible exhibits, beyond a reasonable doubt, each and every essential element of the offense alleged; specifically, the Government would have proven

certain stipulated facts set forth in the *Factual Basis,* on file in the record of this cause, as follows:

Special Agent Page Devall, of the Drug Enforcement Administration (DEA) in Beaumont would testify that on August 10, 2004, authorities in Jefferson County, Texas, arrested an individual named Jose Cruz after seizing 18 kilograms of cocaine from a hidden compartment in Cruz's vehicle.   The DEA's investigation revealed that Cruz had acquired the cocaine in Houston, and was transporting it to a buyer in New Jersey.   Agent Devall would testify that following an extended investigation, the intended customer in New Jersey was successfully prosecuted in the Eastern District of Texas for conspiracy to distribute cocaine stemming from the 18 kilogram cocaine seizure on August 10, 2004.

Cooperating Defendant No. 1 would testify that beginning in 2004, he began purchasing multi-kilogram quantities of cocaine from Ramon Gonzalez in Houston, Texas.   Cooperating Defendant No. 1 (CD #1) would further testify that the cocaine seized from Jose Cruz on August 10, 2004, belonged to him and that he purchased the cocaine on this and previous occasions from Ramon Gonzalez.

Special Agent Dwayne Dodds, Drug Enforcement Administration, Houston, would testify that in the Spring of 2006, he was assigned to assist DEA Agents in New York City who were conducting a court authorized wiretap investigation on cellular telephones utilized by cocaine buyers in the New York City area who were receiving cocaine shipments from Houston, Texas.   Agent Dodds would testify that the investigation showed that certain of these cocaine shipments were received from the Ramon Gonzalez drug trafficking organization.   Agent Dodds

would testify that on April 26, 2006, DEA intercepted calls that showed an individual named Charles Scott was en-route from Houston to deliver a quantities of cocaine to buyers in Jackson, Mississippi, Boston, Massachusetts, and elsewhere.  Agent Dodds would testify that on April 26, 2006, officers in Boston, Massachusetts arrested Charles Scott and seized 10 kilograms of cocaine and $104,000 from his vehicle.

Cooperating Defendant  No. 2 would testify that in the Summer of 2006, he was arrested and prosecuted in the Southern District of New York (SDNY) for conspiracy to distribute cocaine. Cooperating Defendant No. 2 (CD #2) would testify that in 2005 and 2006, he worked for Ramon Gonzalez in his cocaine trafficking activities.  CD #2 would testify that he would act as a liaison between Gonzalez and cocaine buyers, including a defendant (still under seal) from Jackson, Mississippi.  CD #2 would testify that on or about April 25, 2006, he arranged for Charles Scott to deliver 10 kilograms of cocaine to the buyer in Jackson, Mississippi.  CD #2 would further testify that after Charles Scott, himself and others, were indicted in the Southern District of New York, the buyer in Jackson, Mississippi, still owed money for previously delivered quantities of cocaine to the Ramon Gonzalez organization.  CD #2 would testify that following his arrest in the Southern District of New York, he entered into a cooperation agreement with DEA.  On a number of occasions in the Fall and early Winter of 2006, CD #2 wore a recording device and met with Defendants Ramon Gonzalez and Adrian Betancourt to discuss cocaine trafficking, including the debt owed by the Jackson, Mississippi buyer. CD #2 would testify that Adrian Betancourt was the primary liaison to the Jackson, Mississippi suspects.  CD #2 would testify that in the early Winter of 2006, Adrian Betancourt made

repeated contacts with Clarence Magee, in an attempt to contact the principal buyer in Jackson, Mississippi, who still owed money to the Gonzalez organization. CD #2 would testify that December 20, 2006, he and Adrian Betancourt picked up Defendants Clarence Magee and Martinez Bracey at the Houston Intercontinental Airport. At that time, CD #2, Adrian Betancourt, Clarence Magee, and Martinez Bracey engaged in conversations pertaining to previous cocaine shipments sent to Mississippi, debts owed for prior cocaine shipments, and a negotiation for a future delivery of 2 kilograms of cocaine. CD #2 would testify that he recorded the conversations on December 20, 2006, and would identify the voices of Clarence Magee, Martinez Bracey and Adrian Betancourt on the recordings.

Forensic Laboratory Analysts would further testify regarding their analysis of the seized cocaine evidence described above. These expert witnesses would testify that their analysis confirmed that the seized evidence was cocaine, a Schedule II controlled substance.

Finally, Defendant Clarence Magee stipulated that in December 2006, he participated in the charged conspiracy and was employed by a Co-Defendant (under seal) in his cocaine trafficking activities. Clarence Magee stipulated that during the course of the conspiracy, he assisted the trafficking of a quantity of cocaine of at least thirty-five hundred (3,500) grams, but not to exceed five thousand (5,000) grams.

Defendant, Clarence Magee, agreed with the facts set forth by the Government, as explained above, and signed the *Factual Basis and Stipulation.* Counsel for Defendant and the Government attested to Defendant's competency and capability to enter an informed plea of guilty. The Defendant agreed with the evidence presented by the Government and personally

testified that he was entering his guilty plea knowingly, freely and voluntarily.

## RECOMMENDED DISPOSITION

**IT IS THEREFORE** the recommendation of the undersigned United States Magistrate Judge that the District Court accept the Guilty Plea of Defendant which the undersigned determines to be supported by an independent factual basis establishing each of the essential elements of the offense charged in **Count 1** of the charging **Information** on file in this criminal proceeding. The Court also recommends that the District Court conditionally accept the plea agreement.[2] Accordingly, it is further recommended that, Defendant, Clarence Magee, be finally adjudged as guilty of the charged offense under Title 21, United States Code, Section 846.

Defendant is ordered to report to the United States Probation Department for the preparation of a presentence report. At the plea hearing, the Court admonished the Defendant that the District Court may reject his plea and that the District Court can decline to sentence Defendant in accordance with the plea agreement, the federal sentencing guidelines and/or the presentence report because the sentencing guidelines are advisory in nature. The District Court

---

[2]"(3) Judicial Consideration of a Plea Agreement.
(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.
(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.
(4) Accepting a Plea Agreement. If the court accepts the plea agreement, it must inform the defendant that to the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the agreed disposition will be included in the judgment.
(5) Rejecting a Plea Agreement. If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A) or (C), the court must do the following on the record and in open court (or, for good cause, in camera):
(A) inform the parties that the court rejects the plea agreement;
(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." FED. CRIM. P. 11(c)(3)-(5).

may defer its decision to accept or reject the plea agreement until there has been an opportunity to consider the presentence report. *See* FED. R. CRIM. P. 11(c)(3). If the Court rejects the plea agreement, the Court will advise Defendant in open court that it is not bound by the plea agreement and Defendant may have the opportunity to withdraw his guilty plea, dependent upon the type of the plea agreement. *See* FED. R. CRIM. P. 11(c)(3)(B). If the plea agreement is rejected and Defendant still persists in the guilty plea, the disposition of the case may be less favorable to Defendant than that contemplated by the plea agreement. Defendant has the right to allocute before the District Court before imposition of sentence.

## **OBJECTIONS**

Within ten (10) days after receipt of this report, any party may serve and file written objections to the report and recommendation of the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and  recommendations, and from  appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error. *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation,  a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v.*

8

*Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 25th day of June, 2008.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE